UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA DIZARD,<br><br>                      Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                      Defendant. | NO.  C14-707-TSZ-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Maria Dizard appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.        FACTS AND PROCEDURAL HISTORY

Plaintiff is a 43-year-old woman with a twelfth-grade education, without high school diploma or GED.  Administrative Record ("AR") at 42-43.  Her past work experience includes employment in data entry and retail sales.  AR at 189.  Plaintiff was last gainfully employed unloading trucks at Target during the holiday season of 2006.  AR at 43, 189.

On January 25, 2011, Plaintiff filed a claim for SSI payments, alleging an onset date of

REPORT AND RECOMMENDATION - 1

February 1, 2008.[1]  AR at 165-74.  Plaintiff asserts that she is disabled due to back pain and numbness, carpal tunnel syndrome, post-traumatic stress disorder ("PTSD"), and knee pain.  AR at 188.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 96-99, 105-13.  Plaintiff requested a hearing, which took place on August 31, 2012.  AR at 35-66.  On November 19, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 17-29.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On May 12, 2014, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1, 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to January 25, 2011.  AR at 41-42.

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Dizard bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On November 19, 2012, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 25, 2011.

2. The claimant's history of bilateral carpal tunnel release surgeries, history of cervical laminectomy and fusion, anxiety disorder, adjustment disorder, and amphetamine dependence in remission are severe.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 416.967(b). The claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday, and can stand and/or walk for about 6 hours in an 8-hour workday with regular breaks. The claimant can frequently handle, finger, and reach. The claimant should avoid concentrated exposure to hazards. The claimant is able to understand, remember, and carry out simple repetitive tasks with superficial contract with the general public.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1972, and was 38 years old, which is defined as a younger individual age 18-49, on the date the

REPORT AND RECOMMENDATION - 5

application was filed.[3]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 25, 2011.

AR at 19-29.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred at step two in failing to include Plaintiff's PTSD, depression, and right shoulder and knee conditions;

2. Whether the ALJ erred in assessing the medical evidence; and

3. Whether the ALJ erred in discounting Plaintiff's credibility.

Dkt. 13 at 1-2.

## VII.   DISCUSSION

A.   <u>Any Step-Two Error is Harmless.</u>

Plaintiff argues that the ALJ erred at step two by (1) rejecting PTSD and depression as severe impairments, (2) finding that Plaintiff's right shoulder condition did not meet the durational requirement, and (3) finding that Plaintiff's knee condition was not medically determinable. The Commissioner defends the ALJ's step-two findings, and also argues that any step-two error is harmless because Plaintiff has failed to identify limitations that were not

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

considered in the RFC assessment as a result of the step-two error.  For the reasons explained below, the Court finds that any step-two errors are harmless.

1. *Standards at Step Two*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985)).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).

A step two severe mental or physical impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.  20 C.F.R. §§ 404.1508, 416.908.

2. *PTSD and Depression*

Plaintiff argues persuasively that the ALJ should have included PTSD and depression as severe impairments at step two.  Dkt. 13 at 3-6.  Plaintiff has not, however, shown how the ALJ's failure to include these impairments prejudiced the ALJ's decision.  A step-two error can be harmless if the limitations caused by the excluded impairment are considered in the RFC assessment.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where limitations considered at step four).

REPORT AND RECOMMENDATION - 7

Plaintiff argues that the ALJ should have considered the PTSD and depression diagnoses of treating physician Belinda Gustafson, M.D.  *See* AR at 290.  Even if this is true, Dr. Gustafson's treatment notes do not mention any functional limitations that result from Plaintiff's diagnoses.  *Id*.  Neither do the treatment notes of other treating providers, as cited by Plaintiff.  Dkt. 13 at 5-6.

Plaintiff directs the Court's attention to the opinion of consultative examiner Brenda Havallana, Ph.D., but Dr. Havallana did not diagnose either PTSD or depression.  AR at 317.  Thus, her opinion does not support the conclusion that the ALJ prejudicially erred in excluding PTSD and depression at step two.

3.   *Right Shoulder Condition*

The ALJ rejected Plaintiff's right shoulder condition as a severe impairment at step two because the record did not establish that it caused limitations for the requisite minimum of twelve months.  AR at 20.  Plaintiff's right shoulder condition was first diagnosed in October 2011, and by August 2012, she had normal range of motion in her right shoulder and did not complain of any symptoms in that shoulder.  AR at 413, 429.  Although Plaintiff contends that she continued to experience "severe pain, weakness, tingling, impingement, numbness, and spasms" (Dkt. 13 at 8 (citing AR at 450)), the August 2012 treatment note attributes symptoms to Plaintiff's left shoulder and neck, not to her right shoulder.  AR at 413.  Plaintiff has failed to establish that the ALJ erred in finding that her right shoulder condition did not meet the durational requirement.  *See* 20 C.F.R. §§ 404.1505, 1509.

4.   *Right Knee Condition*

Plaintiff argues that the ALJ erred in finding that her right knee condition was not a medically determinable impairment, because treating physician Martin Cahn, M.D., diagnosed chondomalacia and osteochondritis in the right knee.  *See* AR at 368, 450.  The record does

REPORT AND RECOMMENDATION - 8

contain those diagnoses, but no evidence that Dr. Cahn examined Plaintiff's knee. *See* AR 348-67, 411-49 (Dr. Cahn's treatment notes). Dr. Cahn's treatment notes contain one reference to Plaintiff's "bad knee," in March 2011. AR at 350. The ALJ did not err in finding that Dr. Cahn's bare diagnoses, without accompanying documentation, and Plaintiff's subjective reporting of symptoms do not establish the existence of a medically determinable impairment.

In sum, because Plaintiff has failed to establish harmful error in the ALJ's step-two findings, the ALJ's findings should be affirmed.

B.   The ALJ Did Not Err in Discounting Plaintiff's Credibility.

The ALJ provided multiple reasons for discounting the credibility of Plaintiff's subjective statements, including (1) inconsistent statements, (2) evidence that Plaintiff magnified her symptoms during a consultative examination, (3) inconsistent medical evidence, and (4) improvement with treatment. AR at 24-25. An ALJ's reasons for discounting the credibility of a claimant's subjective statements must be clear and convincing. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

Plaintiff argues that the ALJ's reasons were not convincing, because the inconsistencies in her statements could have been caused by fluctuating symptoms, the symptom magnification was observed only once, and the inconsistent medical evidence related to her hand and wrist symptoms resulted from a one-time examination. Dkt. 13 at 16-17. The Court disagrees. That symptom magnification was observed only once does not vitiate the one instance it was observed. *See* AR at 343. Evidence of symptom magnification is a convincing reason to discount a claimant's credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This evidence also contradicts Plaintiff's assertion that no provider "questioned [her] truthfulness." Dkt. 13 at 18.

REPORT AND RECOMMENDATION - 9

1   Furthermore, the inconsistent statements cited by the ALJ do undermine the credibility
2   of Plaintiff's subjective reporting.  Plaintiff's described a typical day involving significantly
3   more functionality to a consultative examiner, when compared with her hearing testimony.
4   *Compare* AR at 46-48 *with* AR at 316.  Plaintiff reported more walking ability to a
5   consultative examiner than she reported at the hearing.  *Compare* AR at 50-51 *with* AR at 312.
6   Plaintiff also testified that she had not seen anyone outside of her family on a regular basis
7   over the past two years, because she does not like to go outside or be around people, but
8   someone who identified himself as a "very close" friend completed a third-party function
9   report in February 2011.  *Compare* AR at 55 *with* AR at 195-202.  These inconsistencies in
10  Plaintiff's statements undermine her credibility.  *See Burch v. Barnhart*, 400 F.3d 676, 680
11  (9th Cir. 2005).

12  The ALJ also cited medical evidence that is inconsistent with Plaintiff's allegation that
13  she is unable to lift or carry even light things with dropping them.  *See* AR at 24-25 (citing AR
14  342-43 (indicating minimally impaired grip strength; no atrophy in hand muscles; ability to
15  make a fist, sign her name, and touch her thumb to her fingertips).  Plaintiff argues that the
16  inconsistent medical evidence was procured during a "single, brief" examination, but she does
17  not identify other evidence showing that the examination test results were not consistent with
18  the remainder of the record. Dkt. 13 at 17.  The inconsistency identified by the ALJ is a
19  convincing reason to discount Plaintiff's credibility.  *See Carmickle v. Comm'r of Social Sec.*
20  *Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

21  Finally, the ALJ cited evidence that Plaintiff's mental health symptoms improved with
22  treatment.  AR at 25.  Plaintiff does not challenge this reason.  Improvement with treatment is a
23  convincing reason to discount a claimant's credibility, because impairments that can be
24  "controlled effectively" by treatment are not disabling for purposes of Social Security benefits.

REPORT AND RECOMMENDATION - 10

*See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Because the ALJ's reasons supporting her adverse credibility determination are clear and convincing, the ALJ's finding should be affirmed.

C.      <u>The ALJ Did Not Err in Assessing the Medical Evidence.</u>

Plaintiff argues that the ALJ erred in assessing the opinions of consultative examiner Lisa Garrison, M.D. and treating physician Dr. Cahn regarding her ability to complete manipulative activities, such as handling, fingering, and reaching.  She also argues that the ALJ erred in rejecting Dr. Cahn's opinions regarding her ability to work.  Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of her treating counselor, Jay Lurie, LMHC.  The Court will address each opinion in turn.

　　　　1.      *Standards for Reviewing Medical Opinion Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the

doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* SSR 06-03p, 2006 WL

REPORT AND RECOMMENDATION - 12

2329939, at *3 (Aug. 9, 2006) (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

### 2.   *Opinions as to Plaintiff's Ability to Manipulate*

Dr. Cahn opined in August 2012 that Plaintiff could handle or manipulate on a no more than occasional basis, but Dr. Garrison believed Plaintiff could perform manipulative activities on a frequent basis. *Compare* AR at 343 *with* AR at 451. The ALJ assigned significant weight to this portion of Dr. Garrison's opinion (AR at 26), and rejected Dr. Cahn's opinion as unsupported by clinical findings and inconsistent with Plaintiff's self-reported activities (AR at 25-26).

The basis for Plaintiff's challenge to the ALJ's assessment of the contradictory medical opinions is not entirely clear. Dkt. 13 at 9-11 (arguing that the ALJ's RFC finding as to manipulative activities is "arbitrary," not supported by substantial evidence, and/or in conflict with the ALJ's step-two finding). In any event, the Court concludes that the ALJ's finding as to Plaintiff's manipulative abilities are indeed supported by substantial evidence, namely Dr. Garrison's opinion. As noted by the ALJ, the record does not contain evidence of testing performed by Dr. Cahn to support his opinion regarding Plaintiff's manipulative abilities. Plaintiff asserts that Dr. Cahn observed her dropping items (Dkt. 13 at 10), but Dr. Cahn's treatment notes only record Plaintiff's report that she had trouble holding onto objects, but do not indicate that Dr. Cahn ever tested Plaintiff's ability to grip or manipulate. *See* AR at 413,

433, 435. The ALJ did not err in rejecting Dr. Cahn's unsupported opinion as to Plaintiff's manipulative capabilities. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).

3. *Dr. Cahn's Opinions*

Plaintiff argues that the ALJ erred in rejecting Dr. Cahn's opinions (AR at 368-71, 384-86, 450-51) regarding Plaintiff's workplace limitations on the grounds that his opinions were not supported by his treatment notes and were inconsistent with her self-reported activities. The Court disagrees, because, as explained in Parts VII.A.4 & VII.C.2, *supra*, the ALJ did not err in finding that Dr. Cahn's opinions were not supported by his treatment notes. Plaintiff seems to argue that even if parts of Dr. Cahn's opinion are unsupported, other parts are supported (Dkt. 13 at 14), but fails to identify any portion of the record where Dr. Cahn tested Plaintiff's physical capabilities before rendering his opinions. This lack of support in the record is a specific and legitimate reason to discount Dr. Cahn's opinion. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

4. *Mr. Lurie's Opinion*

The ALJ rejected the December 2011 opinion of Mr. Lurie (AR at 376-77) on the grounds that he relied on Plaintiff's non-credible self-report and on a rejected PTSD diagnosis. AR at 26-27. For the reasons explained in Part VII.A.2, the ALJ's finding that PTSD was not medically determinable is in error (albeit harmless), and thus Mr. Lurie's reference to PTSD is not a germane reason to discount his opinion. But the ALJ's other reason is germane: Mr. Lurie's opinion cites no objective evidence as support, his treatment notes primarily reiterate Plaintiff's self-report, and his objective testing does not corroborate the severity of the limitations opined. AR at 320-26, 392-409. Accordingly, the ALJ did not err in discounting Mr. Lurie's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Because Plaintiff has not identified error in the ALJ's analysis of the medical opinion

REPORT AND RECOMMENDATION - 14

evidence, the ALJ's decision should be affirmed.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **April 6, 2015**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 10, 2015**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 23rd day of March, 2015.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge